Nelson **DIAZ**, etc., Plaintiff, Appellant,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES,** Defendant, Appellee.

**No. 84–1126.**

United States Court of Appeals, First Circuit.

Submitted Sept. 14, 1984.

Decided Oct. 24, 1984.

Richard Cole and Aura Garfunkel, Boston, Mass., on brief for plaintiff, appellant.

William F. Weld, U.S. Atty., Patti B. Saris, Asst. U.S. Atty., and Robert J. Triba, Asst. Regional Atty., Dept. of Health and Human Services, Boston, Mass., on brief for defendant, appellee.

Before CAMPBELL, Chief Judge, COFFIN and BOWNES, Circuit Judges.

PER CURIAM.

Claimant is a child born in 1974. At age four claimant was found severely retarded, and SSI benefits were awarded. The benefits were terminated when claimant moved to Puerto Rico, which did not participate in the SSI program. Upon return to the mainland, claimant again applied for benefits, but was denied them, and he now challenges the denial. We find that, although the Secretary's findings were in large part substantiated, they did not address one significant factor. Accordingly, the case must be remanded for additional findings.

The Secretary's regulations provide that a child will be found disabled if he or she

"Has a medically determinable physical or mental impairment(s) which compares in severity to any impairment(s) which would make an adult (a person age 18 or over) disabled. This requirement will be met when the impairment(s)—

(1) Meets the duration requirement; and

(2) Is listed in Appendix 1 of Subpart P of Part 404 of this chapter; or

(3) Is determined by us to be medically equal to an impairment listed in Appendix 1...."

20 CFR § 416.923(b). We have recently upheld this regulation. *Hinckley v. Secretary of Health and Human Services,* 742 F.2d 19 (1st Cir.1984). Claimant contends he meets listing 112.05, mental retardation, and listing 111.09(A) and (B), communication disorder.

Listing 112.05 reads in relevant part as follows:

"*Mental retardation* —C. IQ of 60–69, inclusive, and a physical or other mental impairment imposing additional and significant restriction of function or developmental progression."

In 1981, claimant was found to have a verbal IQ of 64, a performance IQ of 81,

and a full scale IQ of 70. Unlike Part A of the listings which applies to adults and which directs that the *lowest* IQ score is to be used in determining whether an adult claimant meets the listings (*see* 20 CFR Part 404, Subpart P, Appendix 1, § 12.00 B 4), Part B of the listings, which applies to children, does not state whether the higher, lower, or full scale score should be employed. The Secretary's finding of borderline mental retardation tends to indicate the Secretary used the full scale score of 70 in determining claimant did not meet the listing. Claimant, relying on the "comparable severity" language of 42 U.S.C. § 1382c(a)(3)(A),[1] argues the statute is violated unless the lowest IQ score is used. We do not agree. The vagaries of IQ testing in young children and the different rates at which children learn, acquire one skill over another, or overcome language barriers or other adverse environmental factors may, in some instances, render a full scale score a more accurate determinant of intelligence quotient than a lower subpart score. Indeed, the psychologist conducting the IQ test stated the full scale score of 70 seemed "a reliable and valid measure of [claimant's] present functioning." Thus, on this record, we conclude the Secretary was not required to use claimant's lowest score in determining whether claimant met the listings, and hence the Secretary's finding that claimant does not meet the listing is supported.

■ Next, claimant argues that if he did not meet the mental retardation listing verbatim, he equalled it and the Secretary should have determined his impairment was equivalent to a listed one. He relies on his low Vineland Social Maturity Test score, a test measuring "social competence or the ability to look after one's self and to participate in activities which lead to independence in adulthood." At age 6.75 he achieved a 2.9 age equivalent score and was found to be "functioning like a moderately retarded individual in social skill areas." The examiner indicated claimant's Vineland scores were weakest in communication areas—claimant failed to use names of familiar objects or to talk in short sentences, skills typically attained by 3.15 years of age—but stronger in self-occupation areas such as drawing or using tools, and the examiner felt the large discrepancy between social quotient and intelligence quotient suggested "environmental factors have been salient in negatively influencing [claimant's] overall performance level." On this record, we see nothing in the regulations which required the Secretary to equate claimant's social retardation, which appears to be largely the product of hopefully reversible adverse environmental factors, with mental retardation.

■ Where the Secretary appears to have fallen short, however, is in failing to give adequate consideration to the claim of a communication impairment. Listing 111.-09 reads, in part, as follows:

"111.09 *Communication impairment, associated with documented neurological disorder.* And one of the following: A. Documented speech deficit which significantly affects the clarity and content of the speech; or B. Documented comprehension deficit resulting in ineffective verbal communication for age...."

It is clear from the evidence that claimant has some speech and comprehension problems. It is less clear whether claimant has a "documented neurological disorder" or whether the speech disorder "significantly" affects speech clarity. On the one hand, a 1978 neurological examination report noted marked motor incoordination, the worst being in the mouth and lip muscles; a 1982 neurological report stated it was "obvious"

---

**1.** 42 U.S.C. § 1382c(a)(3)(A) reads
"An individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months (or, in the case of a child under the age of 18, if he suffers from any medically determinable physical or mental impairment of comparable severity."

that claimant had marked motor incoordination and a severe "dysarthria" (i.e., according to Webster's Third New International Dictionary, "difficulty in articulating words due to disease of the central nervous system"); and various speech evaluations report severe articulation problems. On the other hand, a social security examining physician reported claimant's neurological evaluation was normal and claimant's receptive and expressive language was described in one report as only "a little under" his age expectancy level (though the same report also said that claimant, then age 7 years 2 months, performed at a 3.8 year old level on one receptive language test and at a 4.10 year level on another).

█ It is the Secretary's function to determine which professionals to credit and— especially where, as here, such elastic qualifiers as "significantly" figure prominently in the text of the controlling regulation—to explain why claimant meets or does not meet the listing. However, even though claimant specifically argued to both the ALJ and the Appeals Council that he met listing 111.09, the Secretary's opinion contains no mention of that listing or findings with respect to it. This absence renders the decision inadequate to permit effective judicial review. Consequently, we vacate the decision of the district court and direct that the case be remanded to the Secretary for further proceedings, which, at a minimum, should result in findings with respect to the claimed neurological disorder and the combined effect of the mental and neurological impairments.

*Vacated and remanded.*